Daniel R. Shaw (SB No. 281387)
daniel@shawfirm.com
**Shaw Firm**
3196 S. Higuera St. Suite E
San Luis Obispo, CA 93401
Telephone: (805) 439-4646
Facsimile: (805) 301-8030

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.R., a minor child; by and through his guardian ad litem Andy Rock,<br><br>Plaintiff,<br><br>v.<br><br>Lucia Mar Unified School District,<br><br>Defendants. | Case No.: TBD<br><br>**COMPLAINT FOR RELIEF**<br><br>JURY DEMAND |

Plaintiff J.R., by and through his guardian ad litem Andy Rock allege as follows:

## **JURISDICTION AND VENUE**

1.  This is a civil action which this Court has original subject matter pursuant to 28 U.S.C. § 1331 as the actions arise under these laws of the United States, specifically, Title II of the Americans with Disabilities Act.

2.  Venue in this Court is proper under 20 U.S.C. 1391(b) because the Defendant resides in this judicial district and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

///

///

1

**PARTIES**

3.   Plaintiff J.R. is a minor resident of the City of Arroyo Grande, County of San Luis Obispo, California.

4.   Defendant Lucia Mar Unified School District ("District") is a public entity duly incorporated and operating under California law as a school district.

**FACTUAL ALLEGATIONS**

5.   At the time of the events described herein, J.R. was a thirteen-year-old student who attended school within the District.  J.R. was a non-verbal student who could not communicate his wants, needs, or when he was hurt.

6.   J.R. has a long history of Grand Mal seizures which the District was well aware of.  In 2012 J.R. had half his brain removed to help control his seizures.  J.R.'s Grand Mal seizures led to status epilepticus which meant they continue over and over and could lead to his death if not immediately treated.  As a result, the District provided J.R. with a seizure care plan and a one to one aide.

7.   J.R. wore a helmet at all times during school to protect his head and so others would be aware of his fragile condition.

8.   As noted in the District's seizure care plan, a simple bump to the head could cause J.R. to have a Grand Mal seizure.  The District's plan noted that J.R. must be administered a Diastat within one minute of the onset of a seizure.  If administered timely, the Diastat could drastically mitigate the impact of a seizure.  The plan stated that if J.R. hit his head his parents would be notified immediately so they could determine whether to administer a Diastat or not.

9.   It was critically important that J.R.'s aide be well trained on his seizures because his seizures were not always obvious to the casual observer.  J.R.'s seizures could go unnoticed if the aide was not aware of the symptoms.

10.  J.R.'s parents became concerned at the beginning of the 2018-2019 school year because J.R. would resist getting on the school bus to go to school.  Prior to the 2018-2019 school

year, J.R. enjoyed attending school and did not resist getting on the bus.  J.R.'s parents were not sure why he resisted getting on the school bus and did not want to attend school. J.R. could not tell his parents what was bothering him because he was non-verbal.

11.   Additionally, during the 2018-2019 school year, J.R.'s parents noticed he was coming home with scrapes on his back and bruises on his arm.

12.   At the beginning of the 2018-2019 school year, and unbeknown to J.R.'s parents, Christine Germino, J.R.'s one to one aide was utilizing abusive forms of behavior modification.  If J.R. would to drop to the ground, Ms. Germino would place her foot under his groin area to prod him back to his feet.  This would cause J.R.'s testicles to be compressed between his body and Ms. Germino's foot causing him pain.  Moreover, Ms. Germino would yell at J.R.  Based on information and belief, District staff were aware of these inappropriate forms of behavior modification and did nothing.  District staff failed to report Ms. Germino's abusive behavior methodology through the proper channels.

13.   On October 29, 2018, J.R. and Ms. Germino were outside his classroom.  A witness ("Witness"), not employed by the District, observed Ms. Germino pulling J.R. to the ground and striking him in the head.  The Witness immediately reported the observation to the District.  The District did not immediately inform J.R.'s parents pursuant to his seizure care plan.

14.   It took the District four days to report the information to J.R.'s parents.  Once the information was reported, Ms. Germino was arrested.

15.   The District did not adequately train Ms. Germino on J.R.'s seizure plan or how to recognize a seizure.  Moreover, the District failed to provide Ms. Germino with adequate behavior training to deal with students who would drop to the ground or engage in other behavioral challenges.  The District failed to adequately supervise Ms. Germino who they placed as a one to one aide with non-verbal children without adequate adult supervision.

16.   The District is vicariously liable for the conduct of its employees.

17.   J.R. has complied with the California Government Tort Claims Act, Cal. Gov. Code §§

810 *et seq*.

## FIRST CLAIM FOR RELIEF

### Violation of the Americans with Disabilities Act

### (Defendant District)

18.  Plaintiff refers to, and incorporates herein by reference, the preceding paragraphs as though set forth herein.

19.  Effective January 26, 1992, Plaintiff J.R. was entitled to the protections of the "Public Services" provision of Title II of the Americans with Disabilities Act of 1990.  Title II, Subpart A prohibits discrimination by any "public entity," including any state or local government, as defined by 42 USC § 12131, section 201, of the ADA.

20.  Pursuant to 42 USC § 12132, Section 202 of Title II, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by such an entity.  Plaintiff J.R. was at all times relevant herein a qualified individual with a disability as therein defined.

21.  The District has failed in its responsibilities under Title II to provide its services, programs, and activities in a full and equal manner to disabled person as described hereinabove by subjecting J.R. to a hostile education environment.

22.  The District, though its employees, acted with deliberate indifference to J.R.'s right to a learning environment free of abuse and thus is liable for damages.

23.  As a result of the District's failure to comply with its duty under Title II, Plaintiff J.R. has suffered damages including special and general damages according to proof.

## SECOND CLAIM FOR RELIEF

### Negligence

### (Defendant District)

24.  Plaintiff refers to, and incorporates herein by reference, the preceding paragraphs as though set forth herein.

4

25. The District owed J.R. a duty to exercise reasonable care in its interactions with him.  The District failed to exercise reasonable in their actions as alleged herein.

### THIRD CLAIM FOR RELIEF

**Negligence Supervision**

**(Defendant District)**

26. Plaintiff refers to, and incorporates herein by reference, the preceding paragraphs as though set forth herein.

27. District personnel owed J.R. a protective dur of ordinary care, for which the District is vicariously liable.

28. The District's supervisorial employees (such as J.R.'s principal and teacher), to the extent their duties include overseeing the educational environments and the performance of classroom aides and teachers, owe a duty of care to take reasonable measures to guard students against harassment and abuse from foreseeable sources, including classroom aides who are prone to such abuse or inadequately trained and/or monitored to work with students like J.R.

29. As the proximate result of the District's negligent supervision, J.R. has incurred damages as alleged heretofore.

### PRAYER FOR RELIEF

30. Compensatory damages for J.R.'s injuries, psychological and emotional distress, and for any other damages as alleged herein in a sum according to proof;

31. Special damages in a sum according to proof;

32. General damages in a sum according to proof;

33. Injunctive relief in accordance with proof;

34. Attorneys' fees and costs of suit incurred herein; and

35. For such other relief as this Court may deem just and proper.

///

///

1

2                                                    Respectfully submitted,

3

Dated:   November 21, 2019              __/S/ DANIEL R. SHAW_____

4                                                    Daniel R. Shaw
                                                     Attorney for Plaintiff
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28